# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

Nº 10-cv-5068 (JFB) (ETB)

———————————

ANTHONY DEFINA,

Plaintiff,

VERSUS

MEENAN OIL COMPANY, INC., TOM CRONAU, AND ELENA ZAZZERA,

Defendants.

———————————

**MEMORANDUM AND ORDER**
February 15, 2013

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Anthony DeFina ("DeFina" or "plaintiff") commenced this action against Meenan Oil Company ("Meenan"), Tom Cronau ("Cronau"), and Elena Zazzera ("Zazzera") (collectively, "defendants") alleging that defendants violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* and Article 15 of the Executive Law of the State of New York § 296 (the "Human Rights Law"). Plaintiff alleges that he was the subject of age discrimination when he was terminated from his employment in March 2009. Plaintiff also alleges that he was subject to a hostile work environment due to his age. Plaintiff seeks actual, compensatory, emotional, and liquidated damages, as well as attorneys' fees and other costs. Defendants contend that their adverse employment action against plaintiff was not based upon any discriminatory motive, but

rather was based upon plaintiff's misconduct, including misusing a corporate cell phone and disrupting employees of an independent oil distribution terminal. Defendants also contend that plaintiff's hostile work environment claim has no merit.

Defendants now move for summary judgment on all claims, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants defendants' motion in its entirety with respect to the federal claims, and declines to exercise supplemental jurisdiction over the state law claim.

First, there is nothing in the record to indicate that Meenan engaged in age discrimination with respect to its decision to terminate plaintiff, or with respect to its hiring practices generally. To the contrary, the following facts are uncontroverted: (1) the decision-makers – Zazzaera and Cronau

– were both in the protected class (age forty-seven) and very close in age to plaintiff (age fifty-three); (2) as of November 2008, approximately 74% of Meenan oil truck drivers (twenty-nine of thirty-nine drivers) were over the age of forty; (3) eight of the nine drivers hired by Zazzera and Cronau since 2008 were over forty, three of whom were older than plaintiff (including one at age sixty-five) and two others who were nearly the same age; and (4) as of March 2012, over 90% of Meenan drivers (thirty-two of thirty-five drivers) are over the age of forty.

Second, although plaintiff attempts to dispute much of the misconduct attributed to him (his excessive non-productive work time prior to starting his deliveries on multiple, consecutive days; smoking in his truck; his failure to stop or turn on his truck's flashers at a railroad crossing; his excessive non-productive work time at Holtsville oil terminal on successive mornings; his excessive non-productive work time at the end of the shift on multiple, consecutive days; and his leaving work twenty minutes prior to his punch-out time, for which he was paid) or to argue that other workers engaged in similar conduct, there are two reasons for his termination which are uncontroverted. First, two employees of the Holtsville oil terminal complained that plaintiff was "hanging out" at the terminal and being extremely disruptive, and threatened that Meenan drivers would not be allowed to load oil at Holtsville if the situation was not rectified. It is undisputed that if the drivers were banned from Holtsville because of plaintiff's conduct, it would have disastrous consequences for Meenan's ability to serve its Long Island customers. Although plaintiff submits testimony from a foreman at Holtsville stating that plaintiff was not disruptive, plaintiff has failed to controvert that two

Holtsville employees – Bill Bellito and Jason Brazier – made the complaints to Meenan. Thus, plaintiff disputes the accuracy of the complaints by Holtsville, but has not proffered any evidence that controverts that the complaints were made and had serious consequences for Meenan if action was not taken. Second, plaintiff used his corporate cell phone for personal calls, and thus used his phone for 1,538 minutes from January 15, 2009 to February 14, 2009, over 1,000 minutes more than any other driver. At his deposition, plaintiff admitted that he used the cell phone for over an hour per day for personal calls, and acknowledged that he did not believe that Zazzera's and Cronau's problem with his phone use had anything to do with age.

Finally, in a futile attempt to avoid summary judgment, plaintiff argues that two allegedly similarly situated co-workers received more favorable treatment. However, that argument is entirely unpersuasive. Although plaintiff attempts to point to a handful of days when two drivers (Eric DeBono and Matthew Donohue) had non-productive work time, there is no evidence that either of these employees abused their cell phone like plaintiff did or that Meenan received complaints from the Holtsville terminal about these drivers. In fact, when defendants received a third-party complaint about Donohue in August 2010, he was terminated. Moreover, the other purported comparator, DeBono, was forty-three-years-old and in the protected class himself. Thus, these two other workers are not similarly situated to plaintiff and, in any event, the treatment of these two co-workers cannot possibly provide any inference of age discrimination.

In short, even construing the facts most favorably to plaintiff, no rational jury could possibly conclude that plaintiff was the

victim of age discrimination in connection with his termination. Regardless of plaintiff's critique of the thoroughness of defendants' investigation, there is no evidence of age discrimination. In addition, there is no evidence to support his claim that he was subject to a hostile work environment based on his age. Thus, summary judgment on the federal claims is warranted in favor of defendants, and the Court declines to exercise supplemental jurisdiction over the state law claims.

## I. BACKGROUND

### A. Factual Background

The Court has taken the facts set forth below from the parties' depositions, affidavits, and exhibits, and from the parties' respective Rule 56.1 Statements of Facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 50-51 (2d Cir. 2005). Unless otherwise noted, where a party's 56.1 Statement is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it.[1]

### 1. Plaintiff's Role as Oil Truck Driver and Meenan's Corporate Structure

Meenan hired plaintiff in 1989 as an oil truck driver: his responsibilities were to deliver oil to various locations on Long Island. (Defs.' 56.1 ¶ 2.) Plaintiff worked out of a satellite office in Bohemia, New York. (*Id.*) Cronau, Meenan's Delivery Manager, supervised plaintiff and thirty-eight other drivers. (*Id.* ¶ 3.) Cronau worked

out of the main office in Wantagh, New York, and saw plaintiff only one or two times per week. (*Id.* ¶ 4.) Cronau reported to Zazzera, Meenan's General Manager. (*Id.* ¶ 6.) Zazzera also worked out of the Wantagh office, and only saw plaintiff on one occasion between Zazzera's hiring in June 2008 and plaintiff's termination in March 2009. (*Id.* ¶ 7.)

Plaintiff was fifty-three years old at the time of his termination on March 9, 2009. (*Id.* ¶ 2.) Cronau and Zazzera were both forty-seven years old as of that date. (*Id.* ¶¶ 5-6.)

### 2. Plaintiff's Job Performance

#### a. Cell Phone

Meenan issued cell phones to their drivers. (*Id.* at 9.) Defendants claim that Cronau told the drivers around November 2008 that the phones were for business use and emergencies only, (Defs.' 56.1 ¶ 9), but plaintiff claims that he was never told that he could not make personal calls on the phone, (Pl.'s 56.1 ¶ 9.) On February 23, 2009, Zazzera asked Cronau to investigate the company's cell phone bill because she believed drivers were making improper and excessive calls on the corporate cell phones. (Defs.' 56.1 ¶ 10.) Cronau's investigation revealed that between January 15, 2009 and February 14, 2009, plaintiff used his phone for 1,538.04 minutes, over 1,000 minutes more than any other driver. (*Id.*)

At his deposition, plaintiff admitted that he used the cellphone in this manner. (*See* Simon Declaration ("Simon Decl.") Ex. A, Deposition of Anthony DeFina ("DeFina Dep.") at 136-37 ("Q. Do you remember using the phone for an hour on average each day? A. Probably between the whole day, yes. Q. What kind of calls were you making? A. Personal calls. My wife a lot. My wife would call me.").) Plainitff also

---

[1] In addition, where the parties' Rule 56.1 Statements contain specific citations to the record to support their statements, the Court has cited to the Rule 56.1 Statements, rather than the underlying citation to the record.

acknowledged at his deposition that he did not believe that defendants' issues with his cell phone use had anything to do with his age. (*See id.* at 138 ("Q. Do you think that issue with the phone usage had anything to do with your age? A. No, not to my understanding, no.").)

b. Complaints from Holtsville Oil Terminal

Holtsville oil terminal ("Holtsville") is the largest oil terminal on Long Island and the closest oil terminal to several Meenan locations. (Simon Decl. Ex. B, Affidavit of Tom Cronau ("Cronau Aff.") ¶ 10.) Every morning before they begin their deliveries, Meenan drivers take their trucks to Holtsville to fill them with oil. (DeFina Dep. at 61.)

Cronau states that he planned to talk to plaintiff about the excessive cell phone use on March 4, 2009. (Cronau Aff. ¶ 9.) However, before he could have that discussion, a Meenan dispatcher reported to him that an employee at Holtsville, Bill Bellito ("Bellito"), complained about plaintiff to the dispatcher. (*Id.*) Bellito said that plaintiff was "hanging out" at the terminal for thirty to sixty minutes per day even though drivers should only remain in the terminal office for a few minutes. (*Id.*) Bellito allegedly stated that plaintiff was being extremely disruptive and that if the situation was not rectified, Meenan drivers could no longer load oil at Holtsville. (*Id.*) According to defendants, this "would be disastrous to Meenan's ability to efficiently service its customers on Long Island." (*Id.* ¶ 10.) Plaintiff claims that this report was fabricated by Cronau, but also admitted at his deposition that he had no evidence for this allegation. (DeFina Dep. at 130-31.) Plaintiff did introduce the deposition of Joe Ingarra ("Ingarra"), an employee of Holtsville's parent company for thirty-two

years and the Operation and Maintenance Foreman at Holtsville since 2001. (Pulis Declaration ("Pulis Decl.") Ex. 5, Deposition of Joe Ingarra ("Ingara Dep.") at 9-10.) Ingarra testified that he was at the terminal every day and knew all of the drivers. (*Id.* at 11-14.) He said that he has known plaintiff for over ten years, and in that time never witnessed him being disruptive or regularly spending more than five to ten minutes in the terminal office. (*Id.* at 16, 20-21.) Ingarra also stated that Bellito and another employee, Jason Brazier ("Brazier"), had a personality conflict with plaintiff, but that Bellito was only a maintenance worker and that Meenan was never in jeopardy of being barred from loading oil at Holtsville. (*Id.* at 24, 30-31, 45.) Ingarra, however, was unable to controvert that the complaints were made by Bellito and Brazier to Meenan about plaintiff.

The day after Bellito complained to Meenan, Cronau secretly followed plaintiff. (Cronau Aff. ¶ 13.) Cronau observed plaintiff arrive at Holtsville at 7:00 a.m. and finish loading oil at 7:37 a.m. (*Id.* ¶ 16.) Cronau stated that plaintiff entered the Holtsville terminal building at 7:39 a.m. and exited at 8:10 a.m., spending thirty-one minutes in the terminal. (*Id.* ¶¶ 16-17.) Plaintiff denies that he exited the terminal at 8:10 a.m. (Pl.'s 56.1 ¶ 22.) Cronau also followed plaintiff the next day, March 6, 2009, and observed plaintiff spending thirty-seven minutes in the terminal building. (Cronau Aff. ¶ 23.) Although it is unclear from plaintiff's submission, it does appear that he also contests the amount of time he spent in the terminal on March 6. (*See* Pl.'s 56.1 ¶ 28.)

On March 5, 2009, the first day that Cronau followed plaintiff, Cronau allegedly received another message from a dispatcher stating that Bellito had called again to

4

complain about plaintiff. (Cronau Aff. ¶ 18.) Cronau then stopped following plaintiff and went to the terminal. (*Id.*) Cronau stated that Bellito was not at Holtsville when he arrived, but that he spoke to a "Jay B." who confirmed that plaintiff spent between thirty to sixty minutes at the terminal and was disruptive to office staff. (*Id.*) Although the parties do not identify "Jay B.," it appears that Cronau spoke to Jason Brazier, the other employee that Ingarra indicated had a personality conflict with plaintiff. (Ingarra Dep. at 24.) Cronau later that day talked to Bellito on the phone, who confirmed that plaintiff was disruptive and reiterated the threat that Meenan was in jeopardy of losing their ability to use the terminal. (Cronau Aff. ¶ 19.)

### c.  Other Misconduct and Termination

Defendants have articulated several other grounds for terminating plaintiff's employment. Defendants claim that on the two days that Cronau observed him, plaintiff spent fifty and forty-five minutes respectfully at Meenan's office before he left for Holtsville oil terminal, even though drivers should only require between twenty and thirty minutes at the office to plan their route. (*Id.* ¶¶ 13, 23.) However, another driver testified that he normally spends at least forty-five minutes in the morning at the office before each shift. (Simon Decl. Ex. D, Deposition of Eric DeBono ("DeBono Dep.") at 23-25.)

Defendants also allegedly fired plaintiff for smoking in his truck, and for crossing railroad tracks without stopping or using truck flashers, both of which Cronau said he observed on March 5, 2009. (Cronau Aff. ¶¶ 14-15.) Plaintiff admits to smoking in his truck, (DeFina Dep. at 132-34), but claims that younger drivers smoke in their truck without discipline, (Pulis Decl. Ex. 6, Affidavit of Matthew Donohue ("Donohue

Aff.") ¶ 28; Pl.'s Opp'n at 22.) Plaintiff denies failing to stop at the railroad crossing. (DeFina Dep. at 132.) Cronau also observed plaintiff return to the office too early before the end of his shift, and leave the office twenty minutes prior to the time stated on his time sheet, two additional reasons offered for the termination. (Cronau Aff. ¶¶ 21, 22, 24, 26.) Plaintiff claims that not only did he receive permission to return early, but that a younger driver returned to the office at approximately the same time as him. (DeFina Dep. at 104-07, 146-47.) Plaintiff also claims that it was standard practice for drivers to leave twenty minutes early on Thursdays or Fridays to cash their check, but write that they worked until 2:30 p.m. on their time cards. (Pl's Opp'n at 10; DeBono Dep. at 70-71.)

Cronau and Zazzera determined that plaintiff should be fired due to this misconduct, and they terminated his employment on March 9, 2009. (Cronau Aff. ¶ 29.)

### d.  Similarly Situated Employees and Alleged Replacements

Plaintiff claims that two younger similarly situated co-workers, Matthew Donohue and Eric DeBono, aged thirty-seven and forty-four respectively at the time of plaintiff's termination, also committed acts of misconduct but were not terminated for that misconduct. (Pl.'s Opp'n at 12-13.) Specifically, Donohue admitted to smoking in his truck, (Donohue Aff. ¶ 28), while plaintiff claims that DeBono left work early without permission, (DeFina Dep. at 107, 111-13.) Defendants state that Cronau gave DeBono permission to leave early on the day in question. (Cronau Aff. ¶ 39.) Defendants also argue that Donohue and DeBono are not similarly situated because they did not use their cell phone for as many minutes as plaintiff, they were not the

subject of any complaints from employees of Holtsville, and if they did smoke in their trucks or waste significant amounts of time during the day, that neither Cronau or Zazzera knew about that misconduct. (*Id.* ¶¶ 32-34, 37, 38.) Plaintiff claims that Cronau witnessed DeBono leave work early on at least one occasion. (DeFina Dep. at 105-08.)

Although plaintiff claims these younger employees committed misconduct without discipline, defendants received a third-party complaint in August 2010 regarding misconduct by Donohue, and defendants terminated his employment. (Cronau Aff. ¶ 35.) Donohue was thirty-nine at the time. (*Id.*)

As confirmed by plaintiff's counsel at oral argument, there is no evidence that plaintiff was specifically replaced after his termination by a younger individual. As of November 2008, approximately 74% of Meenan oil truck drivers (twenty-nine of thirty-nine drivers) were over the age of forty. (*Id.* ¶ 46.) Since November 2008, when Zazzera hired Cronau as Delivery Manager, defendants have hired nine drivers. (*Id.* ¶ 49.) Eight of those drivers have been over forty years old, and three were older than plaintiff at the time of his termination. (*Id.*) Two additional drivers were fifty-one years old, nearly the same age as plaintiff. (*Id.*) The ages of the individuals hired by Cronau since November 2008 were (at the time of hire): 65, 55, 55, 51, 51, 47, 44, 42, and 38 years old. (*Id.*) As of defendants' submission, thirty-two of Meenan's thirty-five drivers were over the age of forty. (*Id.* ¶ 47.) In his response to defendants' 56.1 statement, plaintiff conclusorily denies these facts but does not present any evidence to the contrary. (Pl.'s 56.1 ¶¶ 47, 50.) It does not even appear that plaintiff sought discovery on this issue.

Defendants have fired six drivers since November 2008. (Cronau Aff. ¶ 48.) Three of those drivers have been over the age of forty, and three have been under forty. (*Id.*) Plaintiff again conclusorily denies this statement, but again without any evidence. (Pl.'s 56.1 ¶ 49.)[2]

### e. Hostile Work Environment

Although not articulated in his memorandum of law, plaintiff also claims he was subject to a hostile work environment due to his age. Plaintiff states that he was given a defective spare truck to drive on March 5 and 6, 2009 so that he would perform his work unsatisfactorily. (DeFina Dep. at 120-22.) Defendants state that Cronau and Zazzera do not assign spare trucks, and played no role in which truck plaintiff was assigned. (Cronau Aff. ¶ 41-42; Simon Decl. Ex. C, Affidavit of Elena Zazzera ("Zazzera Aff.") ¶ 28-29.) Plaintiff also claims that he was assigned extra work due to his age – specifically, that he was directed to inspect the trucks at the end of the month to confirm that they did not contain oil. (DeFina Dep. at 118-120.) Defendants argue that plaintiff agreed to do this work, (Defs' Mem. at 16-17), and plaintiff admitted at his deposition that he not only failed to object to this work or file a union grievance, but that he agreed to the assignment. (*Id.* at 120.)

### B. Procedural Background

Plaintiff filed the complaint in this action on November 2, 2010. Defendants answered

---

[2] Plaintiff states that Cronau never fired anyone under the age of forty while plaintiff worked at Meenan. (Pl.'s 56.1 ¶ 46.) However, plaintiff's citation to this fact is from his own deposition, and the relevant page does not contain any documentation to support this assertion. Even assuming *arguendo* that Cronau did not fire anyone under forty until after plaintiff's termination, this fact alone would not alter the Court's analysis.

the complaint on January 4, 2011. On March 9, 2012, defendants moved for summary judgment. Plaintiff submitted his opposition on May 31, 2012, and defendants submitted their reply on June 21, 2012. The Court held oral argument on July 20, 2012. The Court has fully considered the submissions of the parties.

## II. STANDARD OF REVIEW

The standard for summary judgment is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)

(summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a

discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g., Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

### III. DISCUSSION

Defendants moved for summary judgment on the following grounds: (1) plaintiff cannot establish a *prima facie* case of age discrimination, and in any event, defendants had a legitimate, non-discriminatory reason for their action which plaintiff cannot establish was pretextual, and (2) plaintiff does not have sufficient evidence to establish a hostile work environment claim.

### A. Plaintiff's Age Discrimination Claim

#### 1. Legal Standard

The ADEA states that it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

The overriding issue in an age discrimination case is whether the plaintiff has met her burden of proving that "age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178 (2009) (holding that under the ADEA a plaintiff cannot establish disparate treatment by proving that age was simply a motivating factor in the adverse decision). In the absence of direct evidence of discrimination, claims for employment discrimination based on age are analyzed under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (holding that the Supreme Court's decision in *Gross* did not disturb "the [*McDonnell Douglas*] burden-shifting framework for ADEA cases that has been consistently employed in [the Second] Circuit").

First, a plaintiff must establish a *prima facie* case of unlawful discrimination by showing that (1) she is a member of a protected class (2) who performed her job satisfactorily (3) but suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination (or retaliation). *See McDonnell Douglas Corp.*, 411 U.S. at 802 & n.13 (noting that elements of *prima facie* case vary depending on factual circumstances); *Stratton v. Dep't for the Aging for the City of N.Y.*, 132 F.3d 869, 879 (2d Cir. 1997).

Second, if the plaintiff establishes a *prima facie* case, "a rebuttable presumption of discrimination arises and the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the

employment decision." *Stratton*, 132 F.3d at 879; *see also Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142-43 (2000). The purpose of this step is "to force the defendant to give an explanation for its conduct, in order to prevent employers from simply remaining silent while the plaintiff founders on the difficulty of proving discriminatory intent." *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1335 (2d Cir. 1997) (en banc), *abrogated on other grounds by Reeves*, 530 U.S. at 148.

Third, if the employer articulates a nondiscriminatory reason for its actions, the presumption of discrimination is rebutted and it "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993) (citation omitted); *see also James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). The burden then shifts back to the plaintiff to show, without the benefit of any presumptions, that "a reasonable jury could conclude by a preponderance of the evidence that her age was a 'but for' cause" for the adverse action. *Gorzynski*, 596 F.3d at 107.

To meet this burden, the plaintiff may rely on evidence presented to establish her *prima facie* case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). It is not sufficient, however, for a plaintiff merely to show that she satisfies "*McDonnell Douglas*'s minimal requirements of a *prima facie* case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James*, 233 F.3d at 157. Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *Connell v. Consol. Edison Co.*, 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000).

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove – particularly discrimination." 233 F.3d at 157; *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

## 2. Application

Defendants argue that plaintiff cannot establish a *prima facie* case of age discrimination in connection with his termination because his numerous instances of misconduct were a sufficient justification for discharge, and that plaintiff was not terminated under circumstances giving rise to an inference of discrimination. (Defs.' Mem. at 6-20.) For the purpose of this motion, the Court assumes that plaintiff has satisfied the minimal burden required by *McDonnell Douglas* to make out a *prima facie* case of age discrimination.

Defendants have put forth legitimate, non-discriminatory reasons for plaintiff's termination – namely, that plaintiff "engaged in a succession of acts of misconduct . . . ." (*Id.* at 6.) Specifically, plaintiff used his company issued cell phone for more than 1,000 minutes more than any other driver during a one-month period, and defendants received complaints from Holtsville oil terminal regarding plaintiff's behavior. Defendants also claim that

plaintiff was fired for: smoking in his truck, improperly crossing railroad tracks, non-productive work time at the office before starting his route, non-productive work time by ending his route too early, and leaving work twenty minutes prior to when his time card stated he left work. (Cronau Aff. ¶ 29.)

Hence, the Court proceeds directly to the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find age discrimination by examining each party's evidence individually and then proceeding to evaluate the evidence as a whole. *See Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 314 (2d Cir. 1997); *Tomney v. Int'l Ctr. for the Disabled*, 357 F. Supp. 2d 721, 742 (S.D.N.Y. 2005).

a.   Similarly Situated Employees

In support of his position that defendants' actions were motivated by a discriminatory motive, plaintiff first argues that younger, similarly situated employees were not terminated for similar misconduct. (Pl.'s Opp'n at 7.) Eric DeBono testified that he also spent at least forty-five minutes to complete his required tasks at the main office before starting his shift. (DeBono Dep. at 23.) He also stated that many drivers had coffee or breakfast outside the Holtsville terminal in the morning, and that it was standard practice to leave early on Thursday or Friday to cash checks but still report that the shift ended at 2:30 p.m. (*Id.* at 70-71.) Matthew Donohue stated that he frequently took a coffee break in the morning and returned to the terminal between 1:00 p.m. and 2:00 p.m. (Donohue Aff. ¶¶ 14, 22.) Donohue also admitted to smoking in his truck. (*Id.* ¶ 28.)

The parties dispute whether defendants actually knew about this misconduct, but even resolving all questions of fact in favor

of plaintiff, plaintiff has not presented any evidence that these younger employees were similarly situated. It is well settled that a plaintiff can raise an inference of discrimination by showing disparate treatment – namely, that a similarly situated employee outside the protected group received more favorable treatment. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977); *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). The law does not require the employees to be similarly situated in all respects, but rather requires that they be similarly situated in all *material* respects. *See McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) ("A plaintiff is not obligated to show disparate treatment of an *identically* situated employee."); *accord Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). The Second Circuit has further defined what the term "all material respects" means in this context:

> What constitutes "all material respects" . . . varies somewhat from case to case and, as we recognized in *Norville,* must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness . . . . Hence, the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical . . . . The determination that two acts are of comparable seriousness requires – in addition to an examination of the acts – an examination of the context and

surrounding circumstances in which those acts are evaluated.

*Graham v. Long Island R.R.*, 230 F.3d 34, 40-41 (2d Cir. 2000) (citations and quotations omitted).

As a threshold matter, even construing the evidence most favorably to plaintiff, no reasonable jury could possibly conclude that these employees were similarly situated. While the determination of "[w]hether two employees are similarly situated ordinarily presents a question of fact for the jury," *Graham*, 230 F.3d 39, "[t]his rule is not absolute . . . and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001) (citing *Cruz v. Coach Stores*, 202 F.3d 560, 568 (2d Cir. 2000)). Even if these employees committed one or two acts of misconduct, they are not similar situated because they did not commit as many acts of misconduct. *See Elam v. Regions Fin. Corp.*, 601 F.3d 873, 881 (8th Cir. 2010) ("Although [two other employees] allegedly committed two of the same acts as [plaintiff], [plaintiff]'s record of numerous other acts of misconduct . . . sets her apart."); *Maniccia v. Brown*, 171 F.3d 1364, 1369 (11th Cir. 1999) (holding that comparators were not similarly situated when they were only involved in one act of misconduct and plaintiff committed at least four violations). Even more importantly, DeBono and Donohue were not the subject of complaints from the Holtsville oil terminal, which defendants believed would result in Meenan being barred from using the terminal. Since "plaintiff's misconduct is objectively more serious than that of [the] proposed comparator[s], differential treatment by the employer does not create an issue of fact that will defeat a motion for summary judgment." *Conway v. Microsoft*

*Corp.*, 414 F. Supp. 2d 450, 364 (S.D.N.Y. 2006); *see also Tomasino v. Mount Sinai Medical Ctr. & Hosp.*, No. 97 Civ. 5252, 2003 WL 1193726, at *14 (S.D.N.Y. Mar. 13, 2003) (holding that the comparators were not similarly situated because they did not commit "the most serious of the infractions for which [plaintiff] was discharged").

Furthermore, although plaintiff claims that these two employees were treated more favorably because of their age, defendants actually terminated Donohue in 2010 for an act of misconduct. (Cronau Aff. ¶ 35.) No rational jury could find that this younger employee was treated differently when Donohue was in fact fired for misconduct the next year. *See Cruz*, 202 F.3d at 568 (stating that when two employees engaged in the same misconduct, one Hispanic and one not, the reasonable inference is that the employer did not discriminate when it terminated both employees).

b. Reasons for Termination

Plaintiff also argues that the reasons given for his discharge were pretext for discrimination because he did not commit the misconduct, i.e., he was not actually disruptive at the Holtsville terminal and Meenan was never in jeopardy of being banned from using the terminal. Plaintiff has presented evidence that the foreman of Holtsville did not find plaintiff disruptive, that the complaints actually came from subordinate employees, and that Meenan was never in jeopardy of being banned from the terminal. (Ingarra Dep. at 16, 20, 24, 31, 45.) Defendants claim that they believed they would no longer be able to load oil at Holtsville if the situation with DeFina was not resolved. (Cronau Aff. ¶ 29.)

Plaintiff's arguments raise issue only as to the accuracy or the wisdom of

defendants' decision to terminate plaintiff, but fail to create a triable issue of fact as to whether the proffered reasons for plaintiff's termination were a pretext for discrimination. The question in any discrimination case is not whether defendant's decision to fire plaintiff was correct but whether it was discriminatory. *See, e.g.*, *McPherson v. N.Y.C. Dept. of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case . . . we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what '*motivated* the employer . . . .'" (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)); *Koleskinow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 111 (S.D.N.Y. 2009) ("Where a plaintiff has been terminated for misconduct, the question is not 'whether the employer reached a correct conclusion in attributing fault [to the plaintiff] . . . , but whether the employer made a good-faith business determination.'" (quoting *Baur v. Rosenberg, Minc, Falkoff & Wolff*, No. 07-Civ.-8835, 2008 WL 5110976, at *5 (S.D.N.Y. Dec. 2, 2008))); *Agugliaro v. Brooks Bros., Inc.*, 927 F. Supp. 741, 747 (S.D.N.Y. 1996) ("Even assuming defendants were wrong in their belief that plaintiff had engaged in sexual misconduct, what is significant is that they based their decision to dismiss plaintiff on that belief, and not on his age, gender, or pension status."). Even construing all inferences in plaintiff's favor, the evidence merely suggests that defendants conducted an imperfect investigation and were mistaken in their belief that they would be banned from Holtsville, not that they knew the complaint would have no business repercussions but that they chose to terminate plaintiff anyway *because of* his age. *See Brown v. Soc'y for Seaman's Children*, 194 F. Supp. 2d 182, 191 (E.D.N.Y. 2002) ("[A]lthough plaintiff felt

she had been treated unfairly, . . . [t]here simply is no basis in the record from which a rational juror could find that the reasons given for plaintiff's termination . . . were false or a pretext for discrimination.").

Plaintiff also attempts to rebut defendants' proffered justifications for his termination by arguing that (1) he was never informed that he could only use the corporate cell phone for work-related calls and that there are no written policies to this effect; (2) he had been given permission from dispatch to return early on the days in question; (3) he did stop at the railroad crossing when Cronau was following him; and (4) smoking in the trucks was not in violation of company policy or Department of Transportation regulations. (Pl.'s Opp'n at 15-22.) Even assuming that a rational trier of fact could find all of defendants' justifications false, this is not a case where "the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves*, 530 U.S. at 147. Instead, the Court holds that this is a case where even if there were "sufficient evidence to reject the defendant[s'] explanation, no rational factfinder could conclude that the action was discriminatory . . . [because] . . . plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* at 148.

Plaintiff has not brought forward any evidence to suggest that discriminatory animus motivated defendants' decision in connection with his termination. *See Yu v. N.Y.C. Hous. Dev. Corp.*, No. 11-2738-CV, 2012 WL 3660652, at *2 (2d Cir. Aug. 28, 2012) (summary order) (stating that to survive summary judgment, the Court must

hold that a reasonable jury could find that the "proffered reasons [for the employer's action] . . . were pretextual and that the real reason was discriminatory animus"). First, as of November 2008, approximately 74% of Meenan oil truck drivers (twenty-nine of thirty-nine drivers) were over the age of forty. (Cronau Aff. ¶ 46.) The Court also notes that defendants have hired nine drivers since November 2008, eight of whom were over the age of forty (including one at age sixty-five) and three of whom were older than plaintiff at the time of his termination. (*Id.* ¶ 49.) Defendants have also fired six drivers in that time frame, three of whom were over the age of forty, and three of whom were younger than forty. (*Id.* ¶ 48.) Thirty-two of the thirty-five drivers currently employed by Meenan are also over the age of forty. (*Id.* ¶ 47.) Plaintiff denies these statistics, but does not present any evidence that they are incorrect; it appears that he did not even seek discovery on this issue.[3] These statistics present strong evidence that defendants' termination of plaintiff was not motivated by plaintiff's age. *See Rodriguez v. Pierre N.Y.*, 299 F. Supp. 2d 214, 218 (S.D.N.Y. 2004) (granting summary judgment to defendant in age discrimination case where defendant employed many employees as old or older than plaintiff and where defendant fired a younger employee for the same reason it terminated plaintiff). Moreover, as confirmed at oral argument, plaintiff has no evidence that plaintiff was replaced with a younger individual.

There is also no evidence of ageist comments or actions during the course of plaintiff's employment, or any other evidence that could remotely support an inference of age discrimination. Plaintiff points to a March 18, 2009 e-mail from Cronau to Zazzera in which Cronau states, "We are picking on Tony because of his age." (Pulis Decl. Ex. 23.) However, plaintiff has taken this e-mail wildly out of context. The e-mail is recounting a conversation between Cronau and union representative Mike Praise. It is clear from reading the entire e-mail that Cronau is paraphrasing plaintiff's and Praise's assertions, and is not admitting that defendants discriminated against plaintiff because of his age. No rational jury could reach a contrary conclusion.

In sum, considering the evidence as a whole, and viewing all of the evidence in the light most favorable to plaintiff, no reasonable jury could find that plaintiff's age was the but-for reason for his termination, let alone that age played any role in defendants' decision to terminate plaintiff's employment. Although plaintiff has offered several arguments to defeat summary judgment, "their combined weight is negligible, and no disputed material issues of fact remain." *Pisana v. Merrill Lynch & Co.*, No. 93 Civ. 4541, 1995 WL 438715 at *9 (S.D.N.Y. July 20, 1995) (granting summary judgment as to ADEA claim). Plaintiff has put forth no evidence, other than his age, from which discrimination could be inferred. That single fact is countered by the undisputed, overwhelming evidence weighing against plaintiff's allegations – namely, that plaintiff engaged, or at the very least defendants' believed he engaged, in multiple acts of misconduct, and that defendants continued to hire and fire employees of varying ages (both younger and older than plaintiff). Plaintiff has pointed to some misconduct by other employees, but those employees were not the subject of complaints by the largest oil terminal on Long Island. Thus, in light of the scant evidence in support of plaintiff's

---

[3] This "conclusory" denial without "supporting arguments or facts" is insufficient to defeat a motion for summary judgment. *Bellsouth*, 77 F.3d 603 (internal citations and quotation marks omitted).

claims, and the overwhelming evidence weighing against an inference of discriminatory intent, no reasonable jury could find that plaintiff was fired because of his age. Indeed, the only reasonable conclusion is that plaintiff was fired based on his misconduct. Even if defendants were mistaken and plaintiff did not disrupt the employees at Holtsville, this only raises a question of fact as to whether plaintiff was fired unfairly, not whether he was the subject of discrimination. *See Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) (stating that an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason"); *see also Norton*, 145 F.3d at 120 ("[T]he ADEA does not make employers liable for doing stupid or even wicked things; it makes them liable for discriminating, for firing people on account of their age.").

## B. Plaintiff's Hostile Work Environment Claims[4]

### 1. Legal Standard

To establish a hostile work environment under Title VII, a plaintiff must show that her workplace was "permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Howley v. Town of*

---

[4] The Court notes that, in the preliminary statement of his opposition papers, plaintiff asserts that defendants created a hostile work environment, but then fails to assert this claim at any other point in his opposition. Defendants devote four paragraphs in their moving papers to plaintiff's claim. In any event, the Court has carefully analyzed the record and concludes that there is no evidence to support a hostile work environment claim.

*Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "Isolated instances of harassment ordinarily do not rise to this level." Cruz, 202 F.3d at 570; *see also Williams v. Cnty. of Westchester*, 171 F.3d 98, 100-01 (2d Cir. 1999) ("[P]laintiff must show more than a few isolated incidents of racial enmity" to establish a claim of a racially hostile work environment (internal citations and quotation marks omitted)). A plaintiff must show not only that the conduct in question was "severe or pervasive enough to create an objectively hostile or abusive work environment," but also that "the victim . . . subjectively perceive[d] that environment to be abusive." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (internal citations and quotation marks omitted); *see also Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003). In addition, a plaintiff seeking to establish a hostile work environment claim must demonstrate that "a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002).

Relevant factors to consider in determining whether an environment is sufficiently hostile include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Terry*, 336 F.3d at 148. The Second Circuit has noted, however, that "[w]hile the standard for establishing a hostile work environment is high, . . . . [t]he environment need not be 'unendurable' or 'intolerable.'" *Id.* (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000)). Moreover, although a hostile work environment generally consists of "continuous and concerted" conduct, "a single act can create a hostile work

environment if it in fact works a transformation of the plaintiff's workplace." *Feingold*, 366 F.3d at 150 (quotation marks and alteration omitted).

Further, to succeed on a hostile work environment claim in the instant case, plaintiff must link the actions by defendants to his age. Although "[f]acially neutral incidents may be included, of course, among the 'totality of the circumstances' that courts consider in any hostile work environment claim," *Alfano*, 294 F.3d at 378, plaintiff nevertheless must offer some evidence from which a reasonable jury could infer that the facially neutral incidents were in fact discriminatory, *see Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 440 (2d Cir. 1999), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ("But to sustain a Title VII hostile environment claim [plaintiff] must show more – she must produce evidence that she was discriminated against because of her race, and this she has not done."); *see also Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002) (requiring "some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory").

The standard under Title VII is applicable to hostile work environment claims under the ADEA. *See, e.g.*, *Terry*, 336 F.3d at 148 ("The same standards apply to hostile work environment claims brought under the ADEA.").

### 2. Application

In a conclusory fashion, plaintiff argues that defendants created a hostile work environment in plaintiff's last week of work. (Pl.'s Opp'n at 1; DeFina Dep. at 91.) Upon reviewing defendants' moving papers and plaintiff's deposition, it appears that plaintiff claims he was subject to a hostile work

environment because (1) he was given a defective spare truck to drive on March 5 and 6, 2009 so that he would perform his work unsatisfactorily, and (2) he was assigned extra work due to his age. (Defs.' Mem. 15-17.) Defendants state that that there is no evidence that drivers received preferential treatment in the assignment of spare trucks, and that plaintiff actually volunteered for this extra work. (*Id.*)

With respect to these claims, plaintiff has put forth no evidence from which a rational jury could conclude that his workplace was "permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Howley*, 217 F.3d at 153 (quoting *Harris*, 510 U.S. at 21). In addition, these events are facially-neutral, work-related conduct, and plaintiff has offered no evidence from which a rational jury could infer that these facially-neutral actions were discriminatory. In other words, plaintiff has not provided any evidence that would provide a circumstantial basis, or any other basis, for a rational jury to infer that the age-neutral conduct alleged was discriminatory. Plaintiff has simply not shown – through evidence of age related comments or actions, through evidence of other similarly situated co-workers who were not subjected to the same conduct, or through any other evidence – how the alleged conduct was discriminatory based on plaintiff's age.[5]

---

[5] In addition, the Court notes that the record does not even support plaintiff's factual contentions with respect to the facially-neutral conduct. With respect to the assignment of trucks, even third-party witness DeBono stated that mechanics assign drivers trucks, (DeBono Dep. at 24-25), and Cronau and Zazzera stated that they play no role in the assignment of trucks, (Cronau Aff. ¶ 41-42; Zazzera Aff. ¶ 28.)

\*   \*   \*

The Court recognizes that it must proceed with great caution in granting summary judgment in discrimination cases where intent, as drawn from inferences, is a core issue. However, as the Second Circuit has noted, "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all [discrimination] cases." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). That is precisely the situation here. Plaintiff relies on pure speculation and has not produced sufficient evidence to support a rational finding that, more likely than not, plaintiff's age was the real reason for the termination, or that plaintiff was subject to a hostile work environment due to his age. Accordingly, the Court finds that plaintiff has failed to raise a genuine question of fact as to his ADEA claims and grants defendants' motion for summary judgment.

## C. New York State Claims

Plaintiff's complaint also asserts a cause of action under New York State law. Having determined that the federal claims do not survive summary judgment, the Court concludes that retaining jurisdiction over any state law claims is unwarranted. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should

'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc*., No. 06-CV-6497T, 2007 WL 1703914, at \*5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 53 (2d Cir. 1986)).

Therefore, in the instant case, the Court, in its discretion, "'decline[s] to exercise supplemental jurisdiction'" over plaintiff's state law claim because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. N.Y.-Presbyterian Hosp*., 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. E. Meadow Union Free Sch. Dist*., 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Claiborne, Inc.*, No. 99 Civ. 3608, 2002 WL 1561126, at \*4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over the remaining state law claims given the absence of any federal claims that survive summary judgment and dismisses plaintiff's state claim without prejudice.

---

Plaintiff's conclusory assertions to the contrary have no basis in the evidence presented to the Court. With respect to the extra work, plaintiff admitted at his deposition that he agreed to do the work, and never complained or filed a union grievance regarding this assignment. (DeFina Dep. at 119-120.)

IV. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment in its entirety with respect to the federal claims. The Court declines to exercise supplemental jurisdiction over the state law claim, and dismisses the state law claim without prejudice. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 15, 2013
      Central Islip, NY

\* \* \*

Plaintiff is represented by Kyle T. Pulis, Scott Michael Mishkin, P.C., One Suffolk Square Suite 240, Islandia, New York 11749. The attorneys for defendants are John M. Simon, Stoneman, Chandler & Miller LLP, 99 High Street, Boston, Massachusetts, 02110 and Cynthia Weiss Antonucci, Harris Beach, PLLC, 100 Wall Street, New York, New York, 10005.